IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW ORRSON, | § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO.: 4:25-cv-1776 |
| v. | § § | |
| SIG SAUER, INC. | § § | |
| *Defendant.* | § § | |

### SIG SAUER, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Sig Sauer, Inc. ("Sig Sauer") moves pursuant to Fed. R. Civ. P. 12(b) to dismiss Plaintiff's claims for negligence, strict liability, and breach of warranty. All of Plaintiff's causes of action fail to state a claim upon which relief may be granted because he has not pled sufficient facts to sustain any claims for which Sig Sauer can be found liable under governing law. His Complaint should be dismissed in its entirety.

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... 2

Table of Authorities ...................................................................................................................... 3

Summary of Argument ................................................................................................................. 6

Factual Background ...................................................................................................................... 6

Legal Standard .............................................................................................................................. 8

Argument ...................................................................................................................................... 9

    I.    Plaintiff's Allegations Relating to Negligence and Strict Liability Fail to State a Claim For Which Sig Sauer Can Be Found Liable Under Texas Law. .................................................................................................. 9

        A.    Texas Law Does Not Permit Claims of Design Defect When a Purchaser Elects to Buy a Version of a Product Without an Optional Safety Device Offered by the Manufacturer. ....................................................................................... 9

        B.    Plaintiff Does Not Plead Sufficient Facts Alleging a Design Defect to Sustain a Claim Under the Texas Product Liability Act, and Texas Law That Creates a Higher Standard to Make a Claim Against a Firearm Manufacturer. .................... 11

    II.    All of Plaintiff's Causes of Action Fail Because Design Defect Claims Sounding in Negligence, Strict Liability, and Breach of Warranty Are One and the Same Under Texas Law ........................................... 12

    III.    Plaintiff's Failure to Allege Whether He Purchased the P320 At Issue Requires Dismissal of Both His Breach of Express and Implied Warranty Claims. ....................................................................................... 13

        A.    Plaintiff Has Not Sufficiently Alleged a Claim for Breach of the Implied Warranty of Merchantability. ............................................ 13

        B.    Plaintiff's Affirmative Allegations are Factually Insufficient to Support His Breach of an Express Warranty Claim. ................................................................................................... 16

Conclusion ................................................................................................................................. 19

Certificate of Service ................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Tobacco Co. v. Grinnell*,
  951 S.W.2d 420 (Tex.1997) .................................................................................. 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................... 9, 15, 19

*Autohaus, Inc. v. Aguilar*,
  794 S.W.2d 459 (Tex. App.—Dallas 1990, writ denied) ....................................... 18

*Banzhaf v. ADT Sec. Sys. Sw., Inc.*,
  28 S.W.3d 180 (Tex. App.—Eastland 2000, pet. denied) ........................... 9, 10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 8, 13

*Brooks v. Knapheide Mfg. Co.*,
  707 F.Supp.3d 680 (E.D. Tex. 2023) ..................................................................... 14

*Coghlan v. Aquasport Marine Corp.*,
  73 F.Supp.2d 769 (S.D. Tex. 1999) ................................................................ 15, 16

*Coghlan v. Wellcraft Marine Corp.*,
  240 F.3d 449 (5th Cir. 2001) ................................................................................. 16

*Coppock v. Nat'l Seating & Mobility, Inc.*,
  121 F.Supp.3d 661 (W.D. Tex. 2015) ................................................................... 15

*Ford Motor Co. v. Miles*,
  141 S.W.3d 309 (Tex. App.—Dallas 2004, pet. denied) ....................................... 12

*Gen. Motors Corp. v. Brewer*,
  966 S.W.2d 56 (Tex.1998) ..................................................................................... 13

*Giovinale v. JP Morgan Chase Bank, N.A.*,
  No. CV H-16-986, 2017 WL 3535440 (S.D. Tex. 2017) ...................................... 18

*Great Am. Prod. v. Permabond Int'l, a Div. of Nat'l Starch & Chem. Co.*,
  94 S.W.3d 675 (Tex. App.—Austin 2002, pet. denied) ........................................ 17

*Humble Nat. Bank v. DCV, Inc.*,
  933 S.W.2d 224 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ............... 18

*Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir.2019) .................................................................................... 6

*Jacobs v. Abbott Laboratories, Inc.*,
    No. 3:23-CV-132, 2024 WL 5269200 (S.D. Tex. 2024) ...................................................... 18

*JCW Elecs., Inc. v. Garza*,
    257 S.W.3d 701 (Tex. 2008) .............................................................................................. 14

*Kallus v. Weber-Stephen Prods. LLC*,
    No. 4:20-CV-1065, 2022 WL 3147617 (S.D. Tex. 2022) ...................................................... 17

*Kallus v. Weber-Stephen Prods. LLC*,
    No. 4:20-CV-1065, 2022 WL 4138580 (S.D. Tex. Sept. 9, 2022) ........................................ 17

*Keene v. Sturm, Ruger & Co., Inc.*,
    121 F.Supp.2d 1063 (E.D. Tex. 2000) ..................................................................... 11, 12, 14

*Lopez v. Huron*,
    490 S.W.3d 517 (Tex. App.—San Antonio 2016, no pet.) ...................................................... 14

*Med. City Dall., Ltd. v. Carlisle Corp.*,
    251 S.W.3d 55 (Tex. 2008) ................................................................................................ 17

*Montoya v. FedEx Ground Package Sys., Inc.*,
    614 F.3d 145 (5th Cir. 2010) ............................................................................................. 8, 9

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
    772 S.W.2d 442 (Tex. 1989) .............................................................................................. 13

*Royal Bus. Mach., Inc. v. Lorraine Corp.*,
    633 F.2d 34 (7th Cir. 1980) ............................................................................................... 18

*Sipes v. Gen. Motors Corp.*,
    946 S.W.2d 143 (Tex. App.—Texarkana 1997, writ denied) .............................................. 16

*Stanfield v. Boston Scientific Corp.*,
    166 F.Supp.3d 873 (S.D.Tex. 2015) ................................................................... 7, 8, 9, 13, 15

*Yocham v. Novartis Pharmaceuticals Corp.*,
    736 F.Supp.2d 875 (D.N.J. 2010) ...................................................................................... 17

**<u>Statutes</u>**

Tex. Bus. & Com. Code Ann. § 2.103 .............................................................................................. 13

Tex. Bus. & Com. Code Ann. § 2.313 ............................................................................... 13, 17, 18

Tex. Bus. & Com. Code Ann. § 2.314 .............................................................................................. 13

Tex. Bus. & Com. Code Ann. § 2.315 ....................................................................................... 13, 15

Tex. Civ. Prac. & Rem. Code § 82.006 ................................................................................. 11

Tex. Civ. Prac. & Rem. Code Ann. § 82.001 ........................................................................ 12

Tex. Civ. Prac. & Rem. Code Ann. § 82.006 ........................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................... 1, 6, 8, 9, 15, 17, 19

## SUMMARY OF ARGUMENT

Plaintiff's claims fail under Texas law. All causes of action are based on the theory that the P320 pistol is defectively designed because it lacks a manual safety. But Sig Sauer offers a version of the P320 with a manual safety and Texas law does not permit liability where a purchaser chooses not to include an available safety feature.

Plaintiff also fails to meet the heightened pleading standard for firearm design claims. He does not allege that the pistol malfunctioned or failed to operate as an ordinary user would expect. A handgun that fires when the trigger is pulled is not defective.

The warranty claims also fail. Plaintiff does not allege that he purchased the P320, which is required to assert breach of warranty. His allegations do not support a claim that the pistol was unfit for its ordinary use or purchased for a particular purpose based on Sig Sauer's advice. The express warranty claim relies only on general marketing language, not on any actionable statement that formed the basis of a bargain. Because each claim is legally deficient, the Complaint should be dismissed under Rule 12(b)(6).

## FACTUAL BACKGROUND

Sig Sauer manufactures firearms for sale to law enforcement, the military, and private purchasers. Compl., ¶ 5. One such firearm is the P320 semi-automatic pistol. Sig Sauer manufactures multiple versions of the P320 with different features for purchasers to choose (or not choose) in order to customize their pistol. *See id*. at ¶ 27 (including historic image from Sig Sauer website); *see also* https://www.sigsauer.com/firearms/pistols/p320.html (last visited June 20, 2025).[1] Plaintiff Matthew Orrson alleges that he "experienced an unintentional discharge" of his 9mm P320 pistol while it was holstered on March 8, 2024. *Id*. at ¶¶ 36-37.

---

[1] When reviewing a motion to dismiss, district courts may consider documents referenced in the complaint that are central to plaintiff's claims. *See Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir.2019).

Plaintiff states that he is a Deputy with the Harris County Sheriff's Office. *Id*. at ¶ 36. His Complaint is silent, however, as to whether he was on duty at the time of the incident or whether the subject P320 was department-issued or his personal firearm. *See generally* Compl. His Complaint also does not specify who purchased the subject P320. *Id*.

Plaintiff alleges that the unintentional discharge occurred when the P320 was inside a Kydex, "full wrap" holster, which he was removing from his waistband. *Id*. at ¶¶ 37-39. Plaintiff claims that the pistol was "secured inside the holster" when it fired and "the projectile" struck his left leg near his pelvis causing "significant injury." *Id*. at ¶¶ 39-40. Plaintiff does not offer any details as to what force or mechanism may have caused the fully holstered pistol to discharge, nor does he allege whether he is claiming the P320 fired with or without trigger actuation. *See generally id*. Plaintiff seeks damages for physical injuries, ongoing medical treatment, pain and suffering, and other damages. *Id*. at ¶ 42.

While Plaintiff's Complaint alleges causes of action for negligence (Count A), strict liability (Count B), breach of implied warranty of merchantability (Count C),[2] and breach of express warranty (Count D), all of Plaintiff's claims are predicated on the allegation that the P320 was defectively designed.[3] *Id*. at ¶¶ 43-68. Plaintiff claims that the pistol's design is unreasonably dangerous because it is "susceptible" to unintended discharges, which he defines as "fir[ing]

---

Plaintiff has included images from the Sig Sauer website in his Complaint. Courts also properly take judicial notice of publicly available documents. *See Stanfield v. Boston Scientific Corp.,* 166 F.Supp.3d 873, 877, 879 (S.D.Tex. 2015) (taking judicial notice of multiple FDA websites "as a matter of public record" because "[t]aking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.").

[2] Count C alleges breach implied warranty of merchantability of fitness for an ordinary purpose. Compl., ¶¶ 57-62. Plaintiff, however, also includes passing references in other portions of his Complaint to implied warranty for fitness of particular purpose. *Id*. at ¶¶ 52-53, 65. To the extent Plaintiff is asserting breach of implied warranty of fitness for a particular purpose, he also fails to plead facts sufficient to sustain this claim.

[3] Plaintiff makes some passing references to "manufacture" and "manufacturing," but he does not allege facts related to any manufacturing defect claims. Plaintiff's action is premised on the allegation that the P320 is defectively designed because it does not feature a manual safety. *See*, *e.g*., Compl., ¶¶ 11-17.

7

without user intent and a full trigger pull," *id*. at ¶ 7 and should be equipped with an external safety. *Id*. at ¶¶ 13, 17.

Plaintiff alleges that any single-action, striker-fired pistol – such as the P320 – is unsafe if it is not equipped with either a tabbed trigger or thumb safety. *Id*. at ¶ 14. Notably, however, while Plaintiff alleges that Sig Sauer "never included a *tabbed trigger* safety as a feature of the P320," *id*. at ¶ 16 (emphasis added), he does not – and cannot – allege the same with respect to a thumb safety. On the contrary, Plaintiff's Complaint incorporates images from Sig Sauer's website that elsewhere makes clear that Sig Sauer offers purchasers the option of equipping P320s with a thumb safety. *See*, *e.g.*, Sig Sauer P320-M18, https://www.sigsauer.com/p320-m18.html (last visited June 20, 2025) ("This firearm is equipped with a manual safety.").

For the reasons set forth below, Plaintiff's Complaint should be dismissed.

## **LEGAL STANDARD**

Courts dismiss a complaint under Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified Rule 8's specificity standards for pleadings, holding that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Stanfield v. Boston Scientific Corp.*, 166 F.Supp.3d 873, 876 (S.D.Tex.2015) (citing *Twombly*, 550 U.S. at 555).

Rather, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Stanfield,* 166 F.Supp.3d at 876 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010)). The plausibility standard "asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[T]hreadbare recitals of the elements of a cause of action," legal conclusions, and "mere conclusory statements do not suffice" under Rule 12(b). *Id.* at 876 (quoting *Iqbal,* 556 U.S. at 678).

## ARGUMENT

I. **Plaintiff's Allegations Relating to Negligence and Strict Liability Fail to State a Claim For Which Sig Sauer Can Be Found Liable Under Texas Law.**

   A. **Texas Law Does Not Permit Claims of Design Defect When a Purchaser Elects to Buy a Version of a Product Without an Optional Safety Device Offered by the Manufacturer.**

Plaintiff's allegations pertaining to his claims for negligence and strict liability fail to meet Rule 12(b)(6)'s standard because they do not allow the court to infer "that the defendant is liable for the misconduct alleged" under Texas law.[4] *Id.* As with all of Plaintiff's claims, his negligence and strict liability claims are premised on the allegation that the P320 is defectively designed. Texas law does not permit a manufacturer to be held liable for design defect claims when it offers optional safety equipment that could have prevented the alleged injury, and the buyer elects not to purchase it. *See Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187 (Tex.App.—Eastland 2000, pet. denied). Plaintiff has not alleged any facts that would allow this Court to find Sig Sauer liable in defective design under Texas law.

In *Banzhaf*, a sporting goods store, an employee, and the parents of a deceased employee filed suit against security company ADT following a robbery. *Id*. at 184. Plaintiffs alleged that the security system at the store was defectively designed because a "duress code" (a silent alarm to be used in hostage situations) was not a standard feature. *Id*. at 187. The internal security department

---

[4] For the purposes of this motion, Sig Sauer assumes that Plaintiff asserts his claims pursuant to Texas law. Sig Sauer does not, however, waive any argument as to choice of law and expressly reserves the right to argue that the law of Texas or any other state should apply to Plaintiff's claims in this lawsuit.

9

in charge of the sporting goods store chain chose not to purchase the safety feature in the security system. *Id*. The court held the following:

> The deterrence of crime involves many complex issues. [The sporting goods chain] adopted a policy of refusing the duress code because it believed that the use of the duress code might endanger employees. Herman's selected a security system to protect its property when its employees were not there. We refuse to abrogate a store owner's right to select the security devices and services that it deems best to protect its property or its employees. We find, as a matter of law, that plaintiffs have shown no defectively designed product in this case.

*Id*. at 187.

Plaintiff has set forth no allegations as to whether the Harris County Sheriff's Department issued him his P320 pistol, or whether he purchased it himself as a department-approved service weapon. *See generally* Compl. But in either event, it was the purchaser, not Sig Sauer, that elected against equipping the gun with the manual thumb safety that Plaintiff alleges would have prevented his injury. Plaintiff also alleges facts that put this decision in context, explaining that many law enforcement agencies require police officers to carry pistols with a round already loaded in the chamber, which likewise protects officer safety by ensuring that their pistol will fire immediately in emergent situations. *Id*. at ¶¶ 28-29. And similar to the sporting goods store's security department, the Harris County Sheriff's Department has the sophistication to "select the security devices and services that it deems best to protect its…employees" whether it issues the P320 pistols to deputies or approves them as duty weapons if purchased by a deputy. *Banzhaf*, 28 S.W.3d at 187.

Texas law does not hold manufacturers liable for the considered decisions of its customers in choosing among available product designs and weighing their own individual safety needs.[5] Sig

---

[5] To the extent Plaintiff argues that manufacturers should be held liable for offering citizens the option to purchase a handgun without a manual thumb safety, which said citizens determine might interfere with their ability to rapidly respond as they deem necessary for self-defense, Plaintiff's claims also may run afoul of the Second Amendment's right to keep and bear arms. *See Mock v. Garland,* 697 F. Supp. 3d 564, 581-82 (N.D.Tex.2023) (granting motion for

10

Sauer offers a P320 pistol equipped with an optional manual thumb safety, and either Plaintiff or his employer affirmatively chose to purchase a P320 without this optional equipment. Plaintiff accordingly has alleged "no defectively designed product in this case," and Sig Sauer is entitled to dismissal as a matter of law. *Id.*

> **B.    Plaintiff Does Not Plead Sufficient Facts Alleging a Design Defect to Sustain a Claim Under the Texas Product Liability Act, and Texas Law That Creates a Higher Standard to Make a Claim Against a Firearm Manufacturer.**

"Texas law makes it difficult for plaintiffs to succeed in cases against manufacturers of firearms." *Keene v. Sturm, Ruger & Co., Inc.*, 121 F.Supp.2d 1063, 1066 (E.D.Tex.2000). In cases involving handguns, plaintiffs must use the consumer expectation test to prove alleged design defect. Tex.Civ.Prac. & Rem. Code § 82.006(b) (plaintiff "may not prove the existence of the defective design by comparison or weighing of the benefits of the firearm…against the risk of personal injury…posed by its potential to cause such injury when discharged."); *see Keene,* 121 F. Supp. at 1067.

"The burden on plaintiffs in firearms cases is to show that the 'actual design of the firearm…was defective, causing the firearm…not to function in a manner reasonably expected by an ordinary consumer of firearms…'" *Id.* (quoting Tex.Civ.Prac. & Rem. Code Ann. § 82.006(a)(1)). As the *Keene* court noted:

> A handgun, in the end, is dangerous because its normal function is to propel bullets with deadly force. That does not make it defective. For a handgun to be defective, there would have to be a manufacturing or design problem, such as a weak or improperly placed part, that would cause it to fire unexpectedly or otherwise malfunction.

*Keene*, 121 F. Supp. 2d. at 1068.

---

preliminary injunction against enforcement of Final Rule that would criminalize plaintiffs' possession of lawful firearms equipped with lawful brace modification, because it would "impair and threaten to deprive them of their fundamental right to keep and bear … arms"); *id.* at 578 (finding it lawful for citizens to choose to attach stabilizing brace to pistols "to more easily and comfortably accomplish the narrow end goals of self-defense").

Plaintiff here has not alleged any "weak or improperly placed part … that would cause [the P320] to fire unexpectedly." Instead, he alleges that the gun fired because it did not contain a manual safety, based on the decision made by either him or his employer to purchase the P320 without such a safety. Nor does plaintiff allege that the gun fired without the trigger being actuated; indeed his allegations about the need for a manual safety suggest the contrary. The fact that a gun without a manual safety will fire when the trigger is actuated is not unexpected, and plaintiff's allegations accordingly fail to state a claim under the Texas Product Liability Act.

**II.     All of Plaintiff's Causes of Action Fail Because Design Defect Claims Sounding in Negligence, Strict Liability, and Breach of Warranty Are One and the Same Under Texas Law.**

The pleading failures detailed above require dismissal of all of Plaintiff's claims. Where, as here, a product liability plaintiff alleges that a product is defective and advances negligence, strict liability, and breach of warranty theories of recovery, they are considered a single claim under the Texas Product Liability Act. *See* Tex.Civ.Prac. & Rem. Code Ann. § 82.001(2) (defining product liability action as "any action against a manufacturer or seller…arising out of personal injury…allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence…[or] breach of express or implied warranty…"). In *Keene*, for example, the court applied this principle to hold that plaintiff's allegations sounding in negligent design and design defect against the firearm manufacturer were one claim. *Keene*, 121 F. Supp. 2d at 1066; *see also Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex.App.—Dallas 2004, pet.denied) ("[W]hether a plaintiff seeks recovery because of negligence or a theory of strict liability in tort, the burden is on the plaintiff to prove that the injury resulted from a defect in the product."). Because Plaintiff's claims rest impermissibly on the allegation that his P320 was

defectively designed based on his (or his employer's) decision to forego an optional safety device (*id*. at ¶¶ 13, 17), they fail to state a claim for which this court can grant relief.

**III. Plaintiff's Failure to Allege Whether He Purchased the P320 At Issue Requires Dismissal of Both His Breach of Express and Implied Warranty Claims.**

Plaintiff's breach of warranty claims also fail to survive a motion to dismiss for two additional reasons. First, Plaintiff fails to allege facts sufficient to sustain a claim for breach of implied warranty of merchantability because his pleading does not allege that the subject P320 operated in a manner that deviated from its ordinary purpose. Further, Plaintiff does not allege that he purchased the P320 at issue. Express warranties and implied warranties of fitness for a particular purpose are created only between a buyer and a seller. *See* Tex. Bus. & Com. Code Ann. §§ 2.313 and 2.315. Texas law defines a "buyer" as "a person who buys or contracts to buy goods." Tex. Bus. & Com. Code Ann. § 2.103 cmt. 2. By failing to allege that Plaintiff is a "buyer," any right to relief in warranty is merely speculative and requires dismissal. *See Stanfield*, 166 F. Supp. 3d at 876 ("Factual allegations must be enough to raise a right to relief above the speculative level." (citing *Twombly*, 550 U.S. at 555)).

**A. Plaintiff Has Not Sufficiently Alleged a Claim for Breach of the Implied Warranty of Merchantability.**

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tex.Bus. & Com.Code Ann. § 2.314. To survive a motion to dismiss, allegations that a defendant breached an implied warranty of merchantability must assert that a product is "unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex.1998) (quoting *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443-44

(Tex.1989)).[6] Plaintiff has not done so. Texas law requires a plaintiff in a product liability action to show proof of a defect. *Brooks v. Knapheide Mfg. Co.*, 707 F. Supp. 3d 680, 692-93 (E.D.Tex.2023). The ordinary purpose of a firearm is to fire; as the *Keene* court stated, a handgun's "normal function is to propel bullets with deadly force." *Keene*, 121 F. Supp. 2d at 1068. This is what an "ordinary consumer" would expect. Tex.Civ.Prac. & Rem. Code Ann. § 82.006(a)(1). That a handgun's purpose is to fire bullets and cause injury "does not make it defective." *Keene*, 121 F. Supp. 2d at 1068. Further, Plaintiff has not alleged whether his P320's discharge was preceded by a trigger pull. Indeed, he has failed to plead any facts to suggest what mechanism or alleged defect caused his pistol to fire. *See generally* Compl. Accordingly, the mere allegation that his P320 was holstered does not answer whether or how the P320 was "unfit" for its ordinary use.

In addition to his cause of action "C" for breach of implied warranty of merchantability for an ordinary purpose, Plaintiff includes cursory allegations that the subject P320 was sold for the particular purpose of being situated in a holster. *See*, *e.g.*, Compl., ¶¶ 53, 65.[7] To the extent Plaintiff is pleading an additional cause of action for breach of implied warranty of fitness for a particular purpose, he also has not pled facts sufficient to sustain this claim.

Texas law provides that a warranty of fitness for a particular purpose is created "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish

---

[6] Texas law recognizes two different breach of warranty theories—one that derives from contract law and the other from strict liability in tort. *Lopez v. Huron*, 490 S.W.3d 517, 521-522 (Tex.App.—San Antonio 2016, no pet.) (quoting *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704-05 (Tex.2008)) ("[W]hen the damages are purely economic, the claim sounds in contract.… [B]ut a breach of implied warranty claim alleging damages for death or personal injury sounds in tort.) (internal citations omitted). An implied warranty claim is a contractual claim if the only injury is to the defective product itself. *Id*. at 522. Here, Plaintiff is not claiming any damages beyond those related to his personal injury resulting from the alleged discharge incident, nor could he given that he does not allege that he purchased the Subject Pistol. As a result, his implied warranty claim sounds in tort, not in contract.

[7] Paragraph 53, under Plaintiff's strict liability cause of action, reads as follows: "Accordingly, SIG impliedly warranted that the P320 was suitable for the particular purpose of being situated within a holster that would need to be removed from a waistband from time [sic], and was free from any design or manufacturing defect."

14

suitable goods." Tex. Bus. & Com. Code Ann. § 2.315. To survive a motion to dismiss, plaintiff must plead sufficient facts that:

> (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting; (2) the buyer actually and justifiably relied on the seller's skill or judgment to select or furnish suitable goods; (3) the buyer notified the seller of the breach within a reasonable time after the buyer discovered or should have discovered any breach of warranty; (4) the buyer suffered injury; and (5) the seller's breach caused the buyer's injury.

*Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661, 669 (W.D.Tex.2015).

As with Plaintiff's other claims, his allegations here are the precise "threadbare recitals of the elements of a cause of action" and "mere conclusory statements [that] do not suffice" under Rule 12(b). *Stanfield,* 166 F. Supp. 3d at 876 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); Plaintiff's allegations that "SIG impliedly warranted that the P320 was suitable for the particular purpose of being situated within a holster that would need to be removed from a waistband" (Compl. ¶ 53), and that "SIG knew, or had reason to know, that the P320 (i) would be situated in holsters . . . [and] owners would walk around with P320 situated in holsters, and . . . that [the] users were in fact relying on SIG's skill, judgment, and express warranty of the P320's fitness for those particular purposes" (Compl. ¶ 65) do nothing more than recite the black letter law elements of a particular purpose claim, as enumerated above. Plaintiff's failure to plead any facts in support of these elements is the precise barebones pleading that a Rule 12(b)(6) motion is designed to target.

Plaintiff's breach of implied warranty of fitness claim must be dismissed for the additional reason that he cannot sustain this claim by mischaracterizing the product's purpose. A warranty of fitness for a particular purpose does not arise unless the particular purpose differs from the usual and ordinary use of the goods. *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D.Tex.1999) ("the particular purpose must be some unusual, out of the ordinary purpose

15

peculiar to the needs of an individual buyer") *aff'd sub nom. Coghlan v. Wellcraft Marine Corp.*, 240 F. 3d 449 (5th Cir. 2001); *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 158–59 (Tex.App.—Texarkana 1997, writ denied) (no warranty of fitness for particular purpose where plaintiffs acquired airbags "for the general purpose for which they were designed."). Where the particular purpose alleged does not differ from the product's ordinary use, the Complaint falls short of stating a viable claim. *See Coghlan*, 73 F. Supp. 2d at 775 (granting motion to dismiss plaintiff's breach of implied warranty claim where the alleged particular purpose – durability of a boat for fishing purposes – was within the ordinary use of fishing boats).

Here, while it is foreseeable that a pistol will be holstered at times, Plaintiff's P320 (and firearms generally) was sold for the purpose of being used as a firearm – not *for the purpose of* its ability to be holstered. Even if it is foreseeable that the subject pistol would be carried in a holster, this would not qualify as a "particular purpose" under Texas law but rather an ordinary use of a firearm. Plaintiff's desperate attempt to redefine the warranty of fitness for a particular purpose does not state a viable claim under Texas law.

### B. Plaintiff's Affirmative Allegations are Factually Insufficient to Support His Breach of an Express Warranty Claim.

Plaintiff alleges that Sig Sauer breached an express warranty "of … fitness for [certain] particular purposes" in relation to the P320. Compl., ¶ 65. As previously discussed, Plaintiff's allegations do not state a viable claim because he fails to allege that he purchased the P320 at issue.

Plaintiff's allegations fail to state an express warranty claim for additional reasons. In order to recover for the breach of an express warranty, a plaintiff must prove: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that

the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury. *Kallus v. Weber-Stephen Prods. LLC*, No. 4:20-CV-1065, 2022 WL 3147617, at *8 (S.D.Tex.2022), report and recommendation adopted, No. 4:20-CV-01065, 2022 WL 4138580 (S.D. Tex. Sept. 9, 2022); *Great Am. Prod. v. Permabond Int'l, a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex.App.—Austin 2002, pet.denied).

Texas law requires a buyer to *rely* upon an express warranty as part of the basis of the bargain in product liability cases. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997) (quoting *Sw. Bell. Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 575 & n.2 (Tex.1991) ("'Basis of the bargain' loosely reflects the common-law express warranty requirement of reliance."); *see also Yocham v. Novartis Pharmaceuticals Corp.*, 736 F.Supp.2d 875, 890 (D.N.J.2010) ("Under Texas law, an express warranty claim requires some evidence that the claimant relied on the representations in deciding to purchase and use the product."). *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex.2008) (quoting Tex. Bus. & Com. Code Ann. § 2.313(a)).

Despite couching his count as a breach of an express warranty, Plaintiff fails to allege that he personally saw any alleged warranty at the time of purchasing the P320 that "became a part of the basis of the bargain." He cites some of Sig Sauer's marketing materials (*see* Compl. ¶ 25) but alleges only that "SIG has made [the representations in these materials] for years." Compl. ¶ 26. Nowhere does he allege that he "relied on the representations in deciding to purchase and use the product" – which he is required to do. *Yocham*, 736 F. Supp. 2d at 890. His express warranty claim fails to survive a 12(b)(6) motion on this basis alone.

But Plaintiff's allegations fail to pass muster for the additional reason that he cannot – and does not – allege any specific statement by Sig Sauer that constitutes an express affirmation of fact

17

or a promise relating to the P320. "[A] statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Jacobs v. Abbott Laboratories, Inc.*, No. 3:23-CV-132, 2024 WL 5269200, at *3 (S.D.Tex.2024) (quoting Tex.Bus. & Com. Code Ann § 2.313(b)). But the only statements Plaintiff cites as alleged "express representations" are precisely the subjective, non-verifiable statements of opinion or intended product performance that cannot create an express warranty. *See, e.g.,* Compl. ¶¶ 25-26 (referencing Sig Sauer's "Safety Without Compromise" marketing language, which states: "We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."); *id.* at ¶ 27 ("SIG has expressly represented that the [P320] possessed a 'robust safety system.'"). *See Giovinale v. JP Morgan Chase Bank, N.A.*, No. CV H-16-986, 2017 WL 3535440, at *3 (S.D.Tex.2017) (finding statement that a promise to services of the "highest quality" was vague or a mere opinion and did not give rise to an express warranty under common law or statute); *Humble Nat. Bank v. DCV, Inc.*, 933 S.W.2d 224, 230 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex.App.—Dallas 1990, writ denied) ("General statements ... are generally regarded as expressions of the seller's opinion or 'the puffing of his wares' and do not create an express warranty.") (quoting *Royal Bus. Mach., Inc. v. Lorraine Corp.*, 633 F.2d 34, 42 (7th Cir.1980).

Because Plaintiff fails to allege any express affirmation of fact or 0promise by Sig Sauer that became a part of the basis of the bargain or on which he relied, he has not shown a plausible

18

entitlement to relief for which Sig Sauer can be held liable under Texas law. *See Iqbal*, 556 U.S. at 679.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because he has failed to plead sufficient facts to sustain his claims for negligence, strict liability, and breach of warranty.

        Respectfully Submitted,

        CLARK HILL PLC

By:   */s/ H. Scott Alexander*
     H. Scott Alexander (attorney-in-charge)
     State Bar No. 00793247
     S.D. Tex. Bar No. 3324305
     CLARK HILL PLC
     2615 Calder Avenue, Suite 240
     Beaumont, Texas 77702
     Telephone:   409.351.3801
     Facsimile:   409.351.3883
     hsalexander@clarkhill.com

Of Counsel:

Brett F. Clements
N.Y. State Bar No. 5221650
S.D. Tex. Bar No. 3924860
Hollingsworth LLP
1350 I Street N.W.
Washington, D.C. 20005
(202) 898-5800 (Phone)
(202) 682-1639 (Fax)
BClements@hollingsworthllp.com

**ATTORNEYS FOR DEFENDANT,
SIG SAUER, INC.**

## **CERTIFICATE OF SERVICE**

I certify that on June 23, 2025, a copy of the foregoing was filed with the Court and served on all counsel of record through the Court's CM/ECF system.

> Respectfully Submitted,
>
> */s/ H. Scott Alexander*
> H. SCOTT ALEXANDER