IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW ORRSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO.: 4:25-cv-1776 |
| v. | § | |
| | § | |
| SIG SAUER, INC. | § | |
| | § | |
| *Defendant.* | § | |

## SIG SAUER, INC.'S MOTION TO STRIKE AND FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT

This case arises from Plaintiff Matthew Orrson's accidental discharge of a loaded Sig Sauer P320 striker-fired pistol, which resulted in a through-and-through injury to Mr. Orrson's left leg. While the Amended Complaint includes allegations relating to various potential theories for accidental handgun discharges, Plaintiff's counsel clarified the basis for the claims during the July 18, 2025 Fed. R. Civ. P. 16 Initial Pretrial and Scheduling Conference. In response to the Court's questions as to the specific theory being espoused, counsel explained that the Plaintiff was alleging that the discharge was caused by a failure of the handgun's internal safeties. Plaintiff's counsel further confirmed that Plaintiff was not alleging that the discharge occurred because of a drop or an unintended actuation of the trigger.

Defendant Sig Sauer, Inc. ("Sig Sauer") accordingly moves pursuant to Fed. R. Civ. P. 12(f) to strike those portions of the Amended Complaint that address alleged product defect theories relating to drop misfires or unintended trigger actuation because such allegations are immaterial to the issue in this case. Sig Sauer further moves pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of Plaintiff's claims of failure to warn, breach of implied and express warranties, and

punitive damages, because these claims are contrary to Texas handgun product liability law and not sufficiently supported by factual allegations in the First Amended Complaint.

## TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................1

LEGAL STANDARD .................................................................................................2

ARGUMENT ...........................................................................................................4

    I.       Plaintiff's Allegations Pertaining to External Safeties, Inadvertent Trigger Pulls and Drop Fires Should Be Stricken As Immaterial Because They Have No Bearing on the Facts or Law of This Case. ......................4

    II.      Plaintiff Fails to Allege Facts Sufficient to State a Claim for Failure to Warn ...................................................................................................7

    III.    Plaintiff Has Not Sufficiently Alleged a Claim for Breach of Implied Warranty. ..............................................................................................10

    IV.    Plaintiff's Allegations are Factually Insufficient to Support His Breach of an Express Warranty Claim ...................................................12

    V.      Plaintiff's Claim for Punitive Damages Is Unsupported By Any Facts That Could Support a Finding of Willful or Gross Neglect. ........................14

CONCLUSION .....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................4, 11, 14

*Autohaus, Inc. v. Aguilar,*
    794 S.W.2d 459 (Tex. App.—Dallas 1990)...........................................................13

*Banzhaf v. ADT Sec. Sys. Sw., Inc.,*
    28 S.W.3d 180 (Tex. App.—Eastland 2000) .......................................................4, 5

*Baytown Christian Fellowship Church v. Underwriters at Lloyd's, London,*
    No. H-10-5173, 2012 WL 3129094 (S.D. Tex. July 31, 2012) ................................2

*In re Beef Indus. Antitrust Litig.,*
    600 F.2d 1148 (5th Cir. 1979) ................................................................................3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................3, 14

*Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.,*
    332 F. Supp. 2d 938 (W.D. La. 2004).....................................................................7

*Cofresi v. Medtronic, Inc.,*
    450 F. Supp. 3d 759 (W.D. Tex. 2020)..................................................................15

*Coghlan v. Aquasport Marine Corp.,*
    73 F. Supp. 2d 769 (S.D. Tex. 1999) *aff'd sub nom. Coghlan v. Wellcraft*
    *Marine Corp.*, 240 F. 3d 449 (5th Cir. 2001) ..................................................11, 12

*Coleman v. Cintas Sales Corp.,*
    40 S.W.3d 544 (Tex. App.—San Antonio 2001)....................................................8

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ...................................................................................1

*Connell Trucking Co. v. Estes Express Lines,*
    2022 WL 21712355 (W.D. Tex. Nov. 30, 2022).....................................................7

*Coppock v. Nat'l Seating & Mobility, Inc.,*
    121 F. Supp. 3d 661 (W.D. Tex. 2015)..................................................................11

*Diggles v. Horwitz,*
    765 S.W.2d 839 (Tex. App.—Beaumont 1989) ......................................................8

*Doe v. Roman Cath. Diocese of Galveston-Hous.*,
No. H-05-1047, 2006 WL 2413721 (S.D. Tex. Aug. 18, 2006) (Rosenthal, J.)......................6

*Elsdon v. U.S. Physical Therapy, Inc.*,
No. 4:18-CV-01766, 2021 WL 8945136 (S.D. Tex. Nov. 30, 2021) ........................................3

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)......................6

*Foltz v. Smith & Wesson Corp.*,
No. 3:08–CV–0858–K, 2009 WL 2596598 (N.D. Tex. Aug. 20, 2009) ..................................7

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ..................................................................................................6

*Gen. Motors Corp. v. Brewer*,
966 S.W.2d 56 (Tex. 1998)....................................................................................................10

*Gilchrist v. Schlumberger Tech. Corp.*,
321 F.R.D. 300 (W.D. Tex. 2017) ...........................................................................................3

*Giovinale v. JP Morgan Chase Bank, N.A.*,
No. CV H-16-986, 2017 WL 3535440 (S.D. Tex. Aug. 17, 2017) ........................................13

*Gomez v. ALN Int'l, Inc.*,
No. H-19-3852, 2022 WL 6468725 (S.D. Tex. Oct. 10, 2022) (Rosenthal, J.)........................8

*Great Am. Prod. v. Permabond Int'l*,
94 S.W.3d 675 (Tex. App.—Austin 2002) ............................................................................13

*Humble Nat'l Bank v. DCV, Inc.*,
933 S.W.2d 224 (Tex. App.—Houston 1996 [14th Dist.])....................................................13

*Idar v. Cooper Tire & Rubber Co.*,
No. C-10-217, 2010 WL 3702579 (S.D. Tex. Sep. 15, 2010) ..................................................7

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ..................................................................................................1

*Jacobs v. Abbott Laboratories, Inc.*,
No. 3:23-CV-132, 2024 WL 5269200 (S.D. Tex. Mar. 19, 2024) .........................................13

*JCW Elecs., Inc. v. Garza*,
257 S.W.3d 701 (Tex. 2008)..................................................................................................10

*Kallus v. Weber-Stephen Prods. LLC*,
    No. 4:20-CV-1065, 2022 WL 3147617, at *8 (S.D. Tex. Aug. 7, 2022), *report
    and recommendation adopted*, No. 4:20-CV-01065, 2022 WL 4138580 (S.D.
    Tex. Sep. 9, 2022) ................................................................................................12

*Keene v. Sturm, Ruger and Co.*,
    121 F. Supp. 2d 1063 (E.D. Tex. 2000)..........................................5, 6, 7, 8, 10

*La. Crawfish Producers Ass'n-W. v. Mallard Basin, Inc.*,
    No. 6:10-cv-01085-RFD-PJH, 2014 WL 782984 (W.D. La. Feb. 24, 2014) ...........................3

*Lee Lewis Constr., Inc. v. Harrison*,
    70 S.W.3d 778 (Tex. 2001)................................................................................14

*Lopez v. Huron*,
    490 S.W.3d 517 (Tex. App.—San Antonio 2016)..............................................10

*Montoya v. FedEx Ground Package Sys., Inc.*,
    614 F.3d 145 (5th Cir. 2010) ..............................................................................4

*Pan Am. Life Ins. v. Blanco*,
    311 F.2d 424 (5th Cir. 1962) ..............................................................................7

*Patterson v. Rohm Gesellschaft*,
    608 F. Supp. 1206 (N.D. Tex. 1985) ..................................................................8

*Perkins v. F.I.E. Corp.*,
    762 F.2d 1250 (5th Cir. 1985) ............................................................................7

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
    772 S.W.2d 442 (Tex. 1989)..............................................................................10

*Rios v. City of Conroe*,
    674 F. App'x 366 (5th Cir. 2016) ......................................................................7

*Roberts v. Zev Techs., Inc.*,
    No. 1:15-CV-309 RP, 2015 WL 7454688 (W.D. Tex. Nov. 23, 2015)..................8

*Rolen v. Burroughs Wellcome Co.*,
    856 S.W.2d 607 (Tex. App.—Waco 1993) ........................................................9

*Royal Bus. Mach., Inc. v. Lorraine Corp.*,
    633 F.2d 34 (7th Cir. 1980) ..............................................................................14

*Sadler v. Benson Motors Corp.*,
    No. 97-1083, 1997 WL 266735 (E.D. La. May 15, 1997)....................................3

iv

*Seifried v. Hygenic Corp.*,
410 S.W.3d 427 (Tex. App.—Houston [1st Dist.] 2013) ....................................................8, 9

*Sipes v. Gen. Motors Corp.*,
946 S.W.2d 143 (Tex. App.—Texarkana 1997) ......................................................................12

*Stanfield v. Boston Scientific Corp.*,
166 F. Supp. 3d 873 (S.D. Tex. 2015) .............................................................1, 3, 4, 11, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..................................................................................................................6

*THI of Tex. at Lubbock I, LLC v. Perea*,
329 S.W.3d 548 (Tex. App.—Amarillo 2010) .......................................................................14

*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011) ....................................................................................6

*Zytax, Inc. v. Green Plains Renewable Energy, Inc.*,
No. H-09-2582, 2010 WL 2219179 (S.D. Tex. May 28, 2010)..................................................3

**Statutes**

Tex. Bus. & Com. Code Ann § 2.313(b) .....................................................................................13

Tex. Bus. & Com. Code Ann. § 2.314........................................................................................10

Tex. Bus. & Com. Code Ann. § 2.315........................................................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(3) ...................................................................14

Tex. Civ. Prac. & Rem. Code Ann. § 41.003(b)........................................................................14

Tex. Civ. Prac. & Rem. Code Ann. § 82.006(a)(1) .................................................................5, 10

Tex. Civ. Prac. & Rem. Code. Ann. § 82.006(b)........................................................................5

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................................3

Fed. R. Civ. P. 12(b) ................................................................................................................4, 11

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 1, 3, 12, 14, 15

Fed. R. Civ. P. 12(f) ...............................................................................................1, 2, 3, 6, 15

Fed. R. Civ. P. 16...........................................................................................................................1

**Other Authorities**

Wright & Miller's Federal Practice & Procedure § 1382 (3d ed.) ....................................................3

## FACTUAL BACKGROUND

Sig Sauer manufactures firearms for sale to law enforcement, the military, and private purchasers. First Amended Complaint ("FAC") ¶ 5, Dkt. No. 14. One such firearm is the P320 semi-automatic pistol. Sig Sauer manufactures multiple versions of the P320 with different features for purchasers to choose (or not choose) in order to customize their pistol. *See id*. at ¶ 29 (including historic image from Sig Sauer website); *see also* https://www.sigsauer.com/firearms/pistols/p320.html (last visited July 25, 2025).[1] Plaintiff Matthew Orrson alleges that he "experienced an uncommanded discharge" of his holstered 9mm P320 pistol while he was removing it from the pocket of his shorts on March 8, 2024. *Id*. at ¶¶ 38-39.

While Plaintiff states that he is a Deputy with the Harris County Sheriff's Office, he alleges that the pistol involved in the accident was "personally-purchased and owned" by him for "personal use." *Id*. at ¶ 38, 45. Plaintiff alleges that the pistol "fired without any trigger actuation or trigger pull" and "while the firearm remained fully secured inside a Kydex holster." *Id*. at ¶ 38-39.  Plaintiff does not allege any specific facts relating to the handgun in question or as to any post-incident inspection of the pistol that would explain the discharge, but he alleges generally that the P320 has a "propensity to discharge without any trigger pull whatsoever due to defective internal components including but not limited to defective sear-striker engagement, inadequate trigger disconnect safety, failure of internal safeties to prevent uncommanded discharge." *Id*. at ¶ 18. Plaintiff alleges that had he "known that the P320 could fire without the trigger being pulled and/or

---

[1] When reviewing a motion to dismiss, district courts may consider documents referenced in the complaint that are central to plaintiff's claims. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Plaintiff has included images from the Sig Sauer website in his FAC. Courts also properly take judicial notice of publicly available documents. *See Stanfield v. Boston Scientific Corp.*, 166 F. Supp. 3d 873, 877, 879 (S.D. Tex. 2015) (taking judicial notice of multiple FDA websites "as a matter of public record" because "[t]aking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.").

that multiple law enforcement agencies had banned the P320 due to safety concerns, he would not have purchased the firearm. Moreover, had Plaintiff been adequately warned that the P320 could discharge without any trigger actuation due to internal component failures, he would not have purchased/carried the firearm." *Id.* at ¶ 47.

Plaintiff further alleges that Sig Sauer "knew many of its customers carry with a chambered round and that American law enforcement agencies as a rule carry with a chambered round." *Id.* at ¶ 31. Plaintiff alleges that Sig Sauer "failed to incorporate necessary information, warnings, and instructions within the P320 manual and web pages" and "negligently misrepresented that the P320 is safe when carried with a round in the chamber." *Id.* at ¶ 51(x)-(xi).

Contrary to Plaintiff counsel's representations during the July 18, 2025 Initial Pretrial Conference, the FAC contains numerous additional allegations that are not connected to Plaintiff's internal safety product defect theory. Paragraphs 14-17 allege that the lack of an external tabbed trigger or thumb safety makes the P320 pistol "inherently unsafe" and "at major risk for drop fires and other discharges without a full trigger pull," neither of which is alleged to have happened here. Similar disconnected allegations relating to drop fires or partial or inadvertent trigger actuations are included in Paragraphs 20, 21, 24, 28, 51(i), and 51(xii) of the FAC.

For the reasons set forth below, all such extraneous allegations in the FAC relating to external safeties, inadvertent trigger pulls, and drop fires should be stricken. In addition, Plaintiff's claims for failure to warn, breach of implied and express warranty, and punitive damages should be dismissed.

## <u>LEGAL STANDARD</u>

Courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Allegations in a complaint are immaterial if they "can have no possible bearing upon the subject matter of the litigation." *Baytown Christian*

*Fellowship Church v. Underwriters at Lloyd's*, *London*, No. H-10-5173, 2012 WL 3129094, at *1 (S.D. Tex. July 31, 2012) (Rosenthal, J.) (quoting *Sadler v. Benson Motors Corp.*, No. 97-1083, 1997 WL 266735, at *1 (E.D. La. May 15, 1997)). Further, they are impertinent if they "do not pertain, and are not necessary, to the issues in question…" *La. Crawfish Producers Ass'n-W. v. Mallard Basin, Inc.*, No. 6:10-cv-01085-RFD-PJH, 2014 WL 782984, at *3 (W.D. La. Feb. 24, 2014) (citing Wright & Miller's Federal Practice & Procedure § 1382 (3d ed.)).

Rule 12(f) motions "serve to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Elsdon v. U.S. Physical Therapy, Inc.*, No. 4:18-CV-01766, 2021 WL 8945136, at *2 (S.D. Tex. Nov. 30, 2021) (quoting *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, No. H-09-2582, 2010 WL 2219179, at *5 (S.D. Tex. May 28, 2010)). Courts have broad discretion in determining whether allegations should be stricken from a complaint. *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 302 (W.D. Tex. 2017) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979)).

Courts dismiss a complaint under Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified Rule 8's specificity standards for pleadings, holding that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Stanfield v. Boston Scientific Corp.*, 166 F. Supp. 3d 873, 876 (S.D. Tex. 2015) (citing *Twombly*, 550 U.S. at 555). Rather, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Stanfield*, 166 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010)). The

plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* "[T]hreadbare recitals of the elements of a cause of action," legal conclusions, and "mere

conclusory statements do not suffice" under Rule 12(b). *Id.* at 876 (quoting *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009)).

## ARGUMENT

**I.    Plaintiff's Allegations Pertaining to External Safeties, Inadvertent Trigger Pulls and Drop Fires Should Be Stricken As Immaterial Because They Have No Bearing on the Facts or Law of This Case.**

Sig Sauer moves to strike Plaintiff's allegations in the FAC relating to external safeties,

inadvertent trigger pulls and drop fires contained in Paragraphs 14-17, 20, 21, 24, 28, 51(i), and

51(xii) of the FAC.  Each of these allegations appear to be holdovers from the Plaintiff's original

Complaint, which Sig Sauer moved to dismiss on June 23, 2025.  As Sig Sauer explained in that

motion, any claimed defect relating to the lack of an external safety on Plaintiff's P320 pistol

would fail as a matter of law because Sig Sauer offers manual thumb safeties on P320 pistols as

optional equipment.[2]  Texas law does not permit a manufacturer to be held liable for design defect

claims when it offers optional safety equipment that could have prevented the alleged injury, and

the buyer elects not to purchase it. *See Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187

(Tex. App.—Eastland 2000).

In *Banzhaf*, a sporting goods store, an employee, and the parents of a deceased employee

filed suit against security company ADT following a robbery. *Id*. at 184. Plaintiffs alleged that the

---

[2] The Sig Sauer website  explains the option of equipping P320s with a thumb safety. *See* Sig Sauer P320-M18, https://www.sigsauer.com/p320-m18.html (last visited July 25, 2025). The P320 Manual, likewise incorporated in the FAC by reference at paragraph 51(x), explains that, "The Sig Sauer P320 is offered with an optional ambidextrous manual safety.  The manual safety blocks the movement of the sear, preventing release of the striker." *See* Sig Sauer, *Sig P320® Pistols Operator's Manual: Handling & Safety Instructions 24, 29 (2021)*, *https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdfRS_MANUAL_P320_8501909-01_REV08_LR.pdf*.

security system at the store was defectively designed because a "duress code" (a silent alarm to be used in hostage situations) was not a standard feature. *Id*. at 187. The internal security department in charge of the sporting goods store chain chose not to purchase the safety feature in the security system. *Id*. The court held the following:

> The deterrence of crime involves many complex issues. [The sporting goods chain] adopted a policy of refusing the duress code because it believed that the use of the duress code might endanger employees. Herman's selected a security system to protect its property when its employees were not there. We refuse to abrogate a store owner's right to select the security devices and services that it deems best to protect its property or its employees. We find, as a matter of law, that plaintiffs have shown no defectively designed product in this case.

*Id*. at 187.

Sig Sauer further explained that "Texas law makes it difficult for plaintiffs to succeed in cases against manufacturers of firearms." *Keene v. Sturm, Ruger and Co.*, 121 F. Supp. 2d 1063, 1066 (E.D. Tex. 2000). In cases involving handguns, plaintiffs must use the consumer expectation test to prove an alleged design defect. Tex. Civ. Prac. & Rem. Code. Ann. § 82.006(b) (plaintiff "may not prove the existence of the defective design by comparison or weighing of the benefits of the firearm…against the risk of personal injury…posed by its potential to cause such injury when discharged."); *see Keene*, 121 F. Supp. 2d at 1067.

"The burden on plaintiffs in firearms cases is to show that the 'actual design of the firearm…was defective, causing the firearm…not to function in a manner reasonably expected by an ordinary consumer of firearms…'" *Keene*, 121 F. Supp. 2d at 1067 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.006(a)(1)). As the *Keene* court noted:

> A handgun, in the end, is dangerous because its normal function is to propel bullets with deadly force. That does not make it defective. For a handgun to be defective, there would have to be a manufacturing or design problem, such as a weak or improperly placed part, that would cause it to fire unexpectedly or otherwise malfunction.

*Keene*, 121 F. Supp. 2d. at 1068.

In response to Sig Sauer's motion, Plaintiff amended his Complaint and further clarified during the Initial Pretrial and Scheduling Conference on July 18, 2025 that he was not contending that his accident was the result of an unintended trigger pull or lack of external safety, but rather that his theory of liability was that the *internal* components of the P320 were defectively designed. Ex. A, Initial Conference Tr. at 8:18-22, July 18, 2025.[3] ("[T]he theory of liability…is that the internal mechanisms of the gun failed to function as designed, causing an unintentional discharge without trigger pull.").

When Plaintiff filed his FAC, he indeed added allegations related to the internal components of the P320 that were absent from the original Complaint. FAC, ¶¶ 18, 24, 47, 51(i) 70(i), 80(i); *see generally* Compl., Dkt. No. 1. He did not, however, remove allegations of a design defect that he has abandoned (and that would in any event fail as a matter of Texas law) – namely that the P320 was defective because it lacked an external safety, such as a tabbed trigger or manual thumb safety, and posed risks for accidental discharges through inadvertent trigger actuation or drops. FAC, ¶¶ 14-17, 20, 21, 24, 28, 51(i), and 51(xii). Each of these allegations should be stricken as immaterial and impertinent. Fed. R. Civ. P. 12(f).

The parties should not expend their time and resources, nor that of this Court, to litigate issues that have no bearing on this case. *See Doe v. Roman Cath. Diocese of Galveston-Hous.*, No. H-05-1047, 2006 WL 2413721, at *2 (S.D. Tex. Aug. 18, 2006) (Rosenthal, J.) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). A court should strike allegations in a complaint when "it is clear that [they] can have no possible

---

[3] A court may consider matters of which it can take judicial notice on a motion to strike pursuant to Rule 12(f). *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1170 (C.D. Cal. 2011); *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that on a motion to dismiss courts may consider matters of which it can take judicial notice); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that on a motion to dismiss courts may take judicial notice of and consider matters of public record).

bearing upon the subject matter of the litigation." *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *3 (S.D. Tex. Sep. 15, 2010) (quoting *Pan Am. Life Ins. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962)).

Further, Sig Sauer would be prejudiced if allegations unrelated to the purported internal safety design are not stricken due to the increased time, effort, and costs of exploring these irrelevant theories of liability. *See Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F. Supp. 2d 938, 944 (W.D. La. 2004). These superfluous allegations could lead to additional factual discovery and investigation, preparation of expert testimony on design defect theories that have no bearing on plaintiff's injuries, and dispositive motion practice relating to issues no longer in the case. *Connell Trucking Co. v. Estes Express Lines*, 2022 WL 21712355, at * 5 (W.D. Tex. Nov. 30, 2022) (increased litigation costs are a form of prejudice) (citing *Rios v. City of Conroe*, 674 F. App'x 366, 372 (5th Cir. 2016)). Failing to strike these allegations would only serve to complicate the issues, cause unneeded delay, and waste resources of the parties and the Court.

## II.     Plaintiff Fails to Allege Facts Sufficient to State a Claim for Failure to Warn.

Texas courts repeatedly have rejected failure to warn claims brought against manufacturers of handguns.  In *Keene*, the Court explained that such claims face a high hurdle because Texas law does not impose any duty to warn of dangers that "are open and obvious." *Keene*, 121 F. Supp. 2d at 1069 (granting summary judgment as a matter of law holding that "there is no duty to warn of the obvious risks of owning or selling a handgun.").  Numerous other Texas courts have agreed. *See Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1275 (5th Cir. 1985) ("dangers of handguns are obvious and well-known"); *Foltz v. Smith & Wesson Corp.*, No. 3:08–CV–0858–K, 2009 WL 2596598, at *2 (N.D. Tex. Aug. 20, 2009) (gun manufacturer had "no duty to warn of the dangers associated with the revolver"); *Patterson v. Rohm Gesellschaft*, 608 F. Supp. 1206, 1209 n.7 (N.D. Tex. 1985) ("Although some commentators have argued that consumers must be warned about the dangers of

handgun use and the possibility of handgun theft, … there is no duty to warn of 'dangers' that are obvious and commonly known.  Obviously, it is not 'necessary to tell a zookeeper to keep his head out of the hippopotamus's mouth'"); *Diggles v. Horwitz*, 765 S.W.2d 839, 842 (Tex. App.— Beaumont 1989) (no duty to warn sellers of the hazards of selling handguns); *but see Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309 RP, 2015 WL 7454688 (W.D. Tex. Nov. 23, 2015) (denying motion to dismiss failure to warn claim where complaint included specific factual allegations to support claim that gun was uniquely prone to drop discharges).

Plaintiff's allegation that Sig Sauer failed to warn about the risks of carrying a P320 pistol with a round loaded in the chamber, FAC ¶ 51(x)(xi), involves the exact type of "open and obvious" danger for which no duty exists.  Plaintiff seeks to bolster his claim by alleging that Sig Sauer "knew many of its customers carry with a chambered round," but this same type of argument was rejected in *Keene. See Keene*, 121 F. Supp. 2d at 1069 (rejecting plaintiff argument that duty to warn existed "because the failure to lock up the gun was reasonably foreseeable").

Moreover, while Plaintiff incorporates by reference the P320 Operator's Manual in support of his failure to warn claim, he makes no mention of the actual warnings contained in that manual. Under Texas law, "[t]he existence of a duty to warn of danger or instruct as to the proper usage of a product is a question of law." *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549 (Tex. App.— San Antonio 2001). "Generally, whether a warning is adequate is a question of fact…However, if a warning specifically mentions the circumstances complained of, then the warning is adequate as a matter of law." *Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 433 (Tex. App.—Houston [1st Dist.] 2013) (citation modified); *Gomez v. ALN Int'l, Inc.*, No. H-19-3852, 2022 WL 6468725, at *6 (S.D. Tex. Oct. 10, 2022) (Rosenthal, J.) (quoting *Seifried*, 410 S.W.3d at 433); *see also Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App.—Waco 1993) (affirming summary

judgment in favor of a pharmaceutical manufacturer that warned of the side effect plaintiff allegedly suffered).

Here, the Sig Sauer P320 Operator's Manual contains repeated and explicit warnings as to the very risks of which Plaintiff alleges Sig Sauer failed to warn. While Sig Sauer does not endorse any particular philosophy of use, the Manual expressly alerts users to the potential risk in carrying the handgun with a chambered round, stating that the user should "not load a cartridge into the chamber until you are ready to use the firearm."[4] The Manual further states that, "[e]very SIG SAUER firearm is shipped with a chamber safety flag. The chamber safety flag prevents the chambering of a round when installed and provides a readily visible indication that the firearm's chamber is empty."[5] The Manual also provides multiple warnings that users should not rely exclusively on a firearm's safety components, as such safety components are no replacement for the user's own safe handling practices.[6] And while the dangers of unsafe handling practices with a firearm are obvious and well-known, the Manual repeatedly states that "[f]ailure to heed any of these warnings may result in serious injury or death to you or others, as well as severe damage to the firearm or other property."[7]

Plaintiffs' claims for failure to warn (FAC ¶¶ 33, 34, 47, 50, 51(v), 51(x) 70(iv), 80(iv) should be dismissed.

---

[4] *See Sig P320® Pistols Operator's Manual: Handling & Safety Instructions,* at 4, *supra* note 2
[5] *Id.* at 6.
[6] *See id.* at 3 ("Your firearm comes equipped with effective, well-designed safety features. However, never rely completely on any safety mechanism. Safety mechanisms are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge."), ("Only your safe firearm handling habits will ensure the safe use of your firearm. Like all mechanical devices, the safety mechanisms are subject to breakage or malfunction and can be negatively affected by wear, abuse, dirt, corrosion, incorrect assembly, improper adjustment or repair, or lack of maintenance. Moreover, there is no such thing as a safety mechanism that is 'childproof' or that can completely prevent accidental discharge from improper usage, carelessness, 'horseplay', or abusive handling. The best safety is proper and applied training in safe firearm handling. Always handle your firearm as though you expect the safeties not to work.").
[7] *Id.* at 2; *see also id.* at 3.

**III.     Plaintiff Has Not Sufficiently Alleged a Claim for Breach of Implied Warranty.**

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tex. Bus. & Com. Code Ann. § 2.314. To survive a motion to dismiss, allegations that a defendant breached an implied warranty of merchantability must assert that a product is "unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (quoting *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443-44 (Tex. 1989)).[8]

Plaintiff apparently recognizes that he cannot rest a breach of implied warranty claim on the fact that his P320 pistol accidentally discharged.  The ordinary purpose of a firearm is to fire; as the *Keene* court stated, a handgun's "normal function is to propel bullets with deadly force." *Keene*, 121 F. Supp. 2d at 1068. This is what an "ordinary consumer" would expect. Tex. Civ. Prac. & Rem. Code Ann. § 82.006(a)(1). That a handgun's purpose is to fire bullets and cause injury "does not make it defective." *Keene*, 121 F. Supp. 2d at 1068.

Plaintiff accordingly alleges that the subject P320 was sold for the "particular purpose of being situated within a holster." *See*, *e.g.*, FAC ¶¶ 59, 60. To the extent Plaintiff is thus pleading a cause of action for breach of implied warranty of fitness for a particular purpose, he has not pled facts sufficient to sustain this claim.

---

[8] Texas law recognizes two different breach of warranty theories—one that derives from contract law and the other from strict liability in tort. *Lopez v. Huron*, 490 S.W.3d 517, 521-522 (Tex. App.—San Antonio 2016) (quoting *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704-05 (Tex. 2008)) ("[W]hen the damages are purely economic, the claim sounds in contract.… [B]ut a breach of implied warranty claim alleging damages for death or personal injury sounds in tort.) (internal citations omitted). An implied warranty claim is a contractual claim if the only injury is to the defective product itself. *Id.* at 522. Here, Plaintiff is not claiming any damages beyond those related to his personal injury resulting from the alleged discharge incident. As a result, his implied warranty claim sounds in tort, not in contract.

Texas law provides that a warranty of fitness for a particular purpose is created "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Tex. Bus. & Com. Code Ann. § 2.315.  To survive a motion to dismiss, plaintiff must plead sufficient facts that:

> (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting; (2) the buyer actually and justifiably relied on the seller's skill or judgment to select or furnish suitable goods; (3) the buyer notified the seller of the breach within a reasonable time after the buyer discovered or should have discovered any breach of warranty; (4) the buyer suffered injury; and (5) the seller's breach caused the buyer's injury.

*Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661, 669 (W.D. Tex. 2015).

Plaintiff here alleges that "SIG knew, or had reason to know, that the P320 (i) would be situated in holsters . . . [and] that [the] users were in fact relying on SIG's skill, judgment, and express warranty of the P320's fitness for those particular purposes." FAC ¶ 75. Such allegations do nothing more than recite the black letter law elements of a particular purpose claim and are "mere conclusory statements [that] do not suffice" under Rule 12(b). *Stanfield,* 166 F. Supp. 3d at 876 (quoting *Iqbal,* 556 U.S. at 678).

Nor can Plaintiff state a particular purpose claim by mischaracterizing the product's purpose. A warranty of fitness for a particular purpose does not arise unless the particular purpose differs from the usual and ordinary use of the goods. *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999) ("the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer") *aff'd sub nom. Coghlan v. Wellcraft Marine Corp.*, 240 F. 3d 449 (5th Cir. 2001); *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 158–59 (Tex. App.—Texarkana 1997) (no warranty of fitness for particular purpose where plaintiffs acquired airbags "for the general purpose for which they [we]re designed."). Where the particular

purpose alleged does not differ from the product's ordinary use, the FAC falls short of stating a viable claim. *See Coghlan*, 73 F. Supp. 2d at 775 (granting motion to dismiss plaintiff's breach of implied warranty claim where the alleged particular purpose – durability of a boat for fishing purposes – was within the ordinary use of fishing boats).

Here, while it is foreseeable that a pistol will be holstered at times, Plaintiff's P320 (and firearms generally) was sold for the purpose of being used as a firearm – that is, to fire bullets – and not *for the purpose of* its ability to be holstered. Even if it is foreseeable that the subject pistol would be carried in a holster, this would not qualify as a "particular purpose" under Texas law but rather an ordinary use of a firearm. Plaintiff's attempt to redefine the warranty of fitness for a particular purpose does not state a viable claim under Texas law.

## IV. Plaintiff's Allegations are Factually Insufficient to Support His Breach of an Express Warranty Claim.

Plaintiff's breach of express warranty claim fails to pass muster under Rule 12(b)(6) because he failed to allege any assertion of fact or promise by Sig Sauer that would entitle Plaintiff to relief under Texas law. In order to recover for the breach of an express warranty, a plaintiff must prove: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury. *Kallus v. Weber-Stephen Prods. LLC*, No. 4:20-CV-1065, 2022 WL 3147617, at *8 (S.D. Tex. Aug. 7, 2022), *report and recommendation adopted*, No. 4:20-CV-01065, 2022 WL 4138580 (S.D. Tex. Sep. 9, 2022); *Great Am. Prod. v. Permabond Int'l*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002).

Plaintiff alleges that he relied upon Sig Sauer's marketing materials and other subjective recommendations about the product; he fails to allege any facts showing that he relied on any express affirmation of fact or promise relating to the P320 – which Texas law requires. "[A] statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Jacobs v. Abbott Laboratories, Inc*., No. 3:23-CV-132, 2024 WL 5269200, at *3 (S.D. Tex. Mar. 19, 2024) (alteration in original) (quoting Tex. Bus. & Com. Code Ann § 2.313(b)). Plaintiff points to Sig Sauer's "Safety Without Compromise" marketing language and statements that the P320 possesses a "robust safety system" and "was trusted by law enforcement." FAC ¶¶ 27-29, 77, 79.[9] These are precisely the subjective statements of opinion or intended product performance that cannot create an express warranty under Texas law. *See Giovinale v. JP Morgan Chase Bank, N.A*., No. CV H-16-986, 2017 WL 3535440, at *3 (S.D. Tex. Aug. 17, 2017) (finding statement that a promise to services of the "highest quality" was vague or a mere opinion and did not give rise to an express warranty under common law or statute); *Humble Nat'l Bank v. DCV, Inc*., 933 S.W.2d 224, 230 (Tex. App.—Houston 1996 [14th Dist.]) ("An imprecise or vague representation constitutes a mere opinion."); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex. App.—Dallas 1990) ("General statements ... are generally regarded as expressions of the seller's opinion or 'the puffing of his wares' and do not create an express warranty.") (quoting *Royal Bus. Mach., Inc. v. Lorraine Corp.*, 633 F.2d 34, 42 (7th Cir. 1980).

---

[9] *See, e.g.,* FAC ¶¶ 27-28 (referencing Sig Sauer's "Safety Without Compromise" marketing language, which states: "We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."); *id.* at ¶ 29 ("SIG has expressly represented that the [P320] possessed a 'robust safety system.'"); *id.* at ¶ 79 ("Plaintiff relied upon SIG's representations that the P320 'won't fire unless you want it to' and that it was 'trusted by law enforcement' when making his purchasing decision.").

Because Plaintiff fails to point to any express affirmation of fact or promise by Sig Sauer he relied upon in deciding to purchase the P320, he has not alleged a plausible entitlement to relief for which Sig Sauer can be held liable under Texas law. *See Iqbal*, 556 U.S. at 679.

**V.    Plaintiff's Claim for Punitive Damages Is Unsupported By Any Facts That Could Support a Finding of Willful or Gross Neglect.**

Plaintiff added a claim for punitive damages in his FAC, but his complaint is devoid of any supporting facts that would warrant such relief.  To state a claim for punitive damages, Plaintiff must "prove by clear and convincing evidence that the plaintiff's harm resulted from, *inter alia*, the defendant's willful act or gross neglect." *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 579 (Tex. App.—Amarillo 2010) (citation modified) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(3), (b)).  Plaintiff thus must allege facts that would meet the high bar of showing both that "from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others… and, the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* at 580 (citation modified) (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784-86 (Tex. 2001)).

Here, Plaintiff "pleads" his punitive damages claim by adding a line item to his Prayer for "exemplary/ punitive damages," and the conclusory assertion that "SIG's conduct constitutes gross negligence, as SIG acted with conscious indifference to the rights, safety, and welfare of P320 users…" FAC ¶ 57. This is the very definition of "labels and conclusions, and a formulaic recitation of the elements of a cause of action" that Rule 12(b)(6) prohibits. *See Stanfield,* 166 F. Supp. at 876 (citing *Twombly*, 550 U.S. at 555).  As such, his punitive damages claim should be dismissed.  *See Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 768 (W.D. Tex. 2020) (dismissing punitive damages claim in product liability action because "[p]laintiff's allegations do not go

14

beyond mere legal conclusions" and fail to show that defendant "acted with an extreme degree of risk or was consciously indifferent to the safety of others by creating" the product).

<u>**CONCLUSION**</u>

For the forgoing reasons, the Court should (1) strike pursuant to Fed. R. Civ. P. 12(f), Plaintiffs' immaterial allegations relating to external safeties, inadvertent trigger pulls, and drop discharges, and (2) dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's claims for failure to warn, breach of express and implied warranty, and punitive damages.


Dated: July 28, 2025

                                     Respectfully Submitted,

                          By:    */s/ H. Scott Alexander*
                                 H. Scott Alexander (attorney-in-charge)
                                 State Bar No. 00793247
                                 S.D. Tex. Bar No. 3324305
                                 CLARK HILL PLC
                                 2615 Calder Avenue, Suite 240
                                 Beaumont, Texas 77702
                                 Telephone:    409.351.3801
                                 Facsimile:    409.351.3883
                                 hsalexander@clarkhill.com

Of Counsel:

Eric G. Lasker
D.C. Bar No. 430180
S.D. Tex. Bar No. 3622386
Brett F. Clements
N.Y. State Bar No. 5221650
S.D. Tex. Bar No. 3924860
Stephanie L. Salek
D.C. Bar No. 995738
S.D. Tex. Bar No. 3926658
Hollingsworth LLP
1350 I Street N.W.
Washington, D.C. 20005
(202) 898-5800 (Phone)

(202) 682-1639 (Fax)
ELasker@hollingsworthllp.com
BClements@hollingsworthllp.com
SSalek@hollingsworthlllp.com

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on July 28, 2025, a copy of the foregoing was filed with the Court and served on all counsel of record through the Court's CM/ECF system.

           Respectfully Submitted,

           */s/ H. Scott Alexander*
           H. SCOTT ALEXANDER