United States District Court
Southern District of Texas
**ENTERED**
February 23, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MATTHEW ORRSON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-1776 |
| | § | |
| SIG SAUER, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This lawsuit arises out of the unexpected discharge of Matthew Orrson's Sig Sauer P320 handgun. (Docket Entry No. 14). Sig Sauer has moved to strike and to dismiss part of the amended complaint. (Docket Entry No. 18). Orrson has responded. (Docket Entry No. 19). Based on the pleadings, the motion, the record, and the applicable law, the court denies the motion to strike and grants in part and denies in part the motion to dismiss. The reasons are set out below.

## I.      Background

Orrson is a deputy with the Harris County Sheriff's Office. (Docket Entry No. 14 ¶ 38). While off duty on March 8, 2024, Orrson was removing his holstered SIG Sauer P320 9mm handgun from a pocket of his shorts. (*Id.*). The holster was a "full wrap" design that provided full protection of the trigger area. (*Id.* ¶ 40). As Orrson was removing the gun from his pocket, it unexpectedly discharged while still secured in the holster and without Orrson pulling the trigger. (*Id.* ¶ 41). Orrson was shot in the leg. (*Id.* ¶ 42). Orrson alleges that as a result, he suffered serious physical injuries requiring emergency medical treatment, ongoing medical care, and pain and suffering. (*Id.* ¶ 44).

On April 17, 2025, Orrson sued Sig Sauer, asserting claims for negligence, strict liability, breach of the implied warranty of merchantability, and breach of express warranty.  (Docket Entry No. 1).  Orrson's complaint was one of dozens that have been filed across the country alleging that P320 pistols unexpectedly discharged.[1]  Sig Sauer moved to dismiss, and Orrson amended his complaint.  (Docket Entry Nos. 7, 14).  The amended complaint asserted the same claims and added specific details about the alleged spontaneous discharge.  (Docket Entry No. 14).  The amended complaint stated that "[t]o be clear, the defect alleged herein is not merely the absence of a manual safety, but rather the P320's propensity to discharge without any trigger pull whatsoever due to defective internal components including but not limited to defective sear-striker engagement, inadequate trigger disconnect safety, [and] failure of internal safeties to prevent uncommanded discharge."  (*Id.* ¶ 18).  The amended complaint alleged that Sig Sauer knew as early as 2014 that sudden or cumulative vibrations, inertial impulses, drops, or slight trigger actuations could cause unexpected discharges from P320s.  (*Id.* ¶¶ 20–21).

At the July 2025 initial conference, Orrson's counsel clarified that "the theory of liability, which I believe it's generally amongst what all the Sig Sauer cases is, is that the internal mechanisms of the gun failed to function as designed, causing an unintentional discharge without

---

[1] *See, e.g.*, *Gordon v. Sig Sauer, Inc.*, Civ. Action No. H-19-585, 2019 WL 4572799 (S.D. Tex. Sep. 20, 2019); *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132 (3d Cir. 2025); *Ahern v. Sig Sauer*, No. 21-cv-11007, 2024 WL 5120984 (D. Mass. Dec. 16, 2024); *Catatao v. Sig Sauer, Inc.*, Civ. Action No. 22-10620, 2024 WL 4011973 (D. Mass. July 9, 2024); *Guay v. Sig Sauer, Inc.*, 626 F. Supp. 3d 536 (D.N.H. 2022); *Currington v. Sig Sauer, Inc.*, No. 25-cv-26, 2025 WL 1695427 (D.N.H. June 17, 2025); *Williams v. Sig Sauer, Inc.*, 799 F. Supp. 3d 470 (E.D.N.C. 2025); *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213 (6th Cir. 2025); *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89 (D.N.H. 2020); *Collette v. Sig Sauer, Inc.*, Civ. Action No. 21-11392, 2021 WL 6052613 (D. Mass. Dec. 21, 2021); *Herman v. Sig Sauer Inc.*, No. 23-6136, 2025 WL 1672350 (10th Cir. June 13, 2025); *Frankenberry v. Sig Sauer, Inc.*, No. 4:19-cv-02990, 2022 WL 22887079 (D.S.C. Feb. 4, 2022); *Anderson v. Sig Sauer, Inc.*, No. 25-cv-113, 2025 WL 2147390 (D.N.H. July 29, 2025); *Mayes v. Sig Sauer, Inc.*, No. 1:19-CV-00146, 2023 WL 2730264 (W.D. Ky. Mar. 30, 2023); *Winningham v. Sig Sauer Inc.*, No. CV-22-01037, 2024 WL 1652788 (D. Ariz. Apr. 17, 2024).

trigger pull." (Docket Entry No. 18-2 at 8). Sig Sauer's counsel asserted that if the theory was not inadvertent trigger pulls, but rather sporadically malfunctioning internal mechanisms, "that removes some of the issues that exist in other cases like this." (*Id.* at 9). Sig Sauer noted that the case might be amenable to mediation depending "on the inspection of the gun," because if "there was something internally that did not work on the gun, that would show up in the internal investigation." (*Id.*).

Sig Sauer now moves to strike the portions of the amended complaint that allege product defect theories related to drop misfires and unintended trigger actuations, arguing that those theories are immaterial. (Docket Entry No. 18 at 1). Sig Sauer also moves to dismiss Orrson's claims for failure to warn, breach of implied and express warranties, and punitive damages, both because those claims are allegedly contrary to Texas law and because they are not sufficiently supported by the alleged facts. (*Id.* at 1–2). Orrson opposes, arguing that he is allowed to pursue multiple theories and that his claims are adequately pleaded. (Docket Entry No. 19).

## II.    The Legal Standard

### A.  The Rule 12(f) Standard

Rule 12(f) allows the court to strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Both because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory or harassing tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Hunter v. Navy Fed. Credit Union*, No. 3:24-CV-0788, 2025 WL 220407, at *1 (N.D. Tex. Jan. 16, 2025) (quoting *Jacobs v. Tapscott*, No. 204CV1968, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004)). "The motion to strike should be granted only when the pleading to be stricken has no

possible relation to the controversy." *Veranda Assocs., L.P. v. Hooper*, 496 F. App'x 455, 458 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)).

"There are two requirements for a successful motion to strike under Rule 12(f)." *Scarborough v. Rotocraft Leasing Co., LLC*, No. 4:23-cv-01519, 2024 WL 3418004, at *2 (S.D. Tex. July 15, 2024) (quoting *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *3 (S.D. Tex. Sep. 15, 2010)). "First, a matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Id.* (quoting *Idar*, 2010 WL 3702579, at *3 (cleaned up)). "Second, a matter can only be stricken under Rule 12(f) if there is a showing of prejudice." *Id.* (quoting *Idar*, 2010 WL 3702579, at *3). "Conclusory statements about unfair prejudice are not enough to justify a motion to strike; a stronger statement is required under Rule 12(f)." *Id.* (quoting *Washington v. Pac. Summit Energy*, Case No. 4:20-CV-290, 2021 WL 229653, at *1 (S.D. Tex. Jan. 21, 2021)).

### B. The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard

4

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.   Analysis

### A.  The Motion to Strike

Sig Sauer moves to strike the allegations in the amended complaint relating to external safeties, inadvertent trigger pulls, and drop fires on the ground that they have "[n]o [b]earing" on the case. (Docket Entry No. 18 at 12). Sig Sauer alleges that these allegations are "holdovers" from Orrson's original complaint and that investigating these irrelevant theories would unnecessarily cost Sig Sauer time and money. (*Id.* at 12, 15). In response, Orrson argues that Rule 12(f) motions are "highly disfavored" and that "[m]otions to strike are granted only where the challenged matter has 'no possible relation' to the controversy and would cause prejudice," which is not the case here. (Docket Entry No. 19 at 5). Orrson argues that it is "proper" for him to

alternatively allege that the defect may manifest "through multiple modes" so long as they all support the central claim that the P320 fires when it should not. (*Id.* at 10).

The court denies the motion to strike. "Striking a pleading is 'a drastic remedy to be resorted to only when required for the purposes of justice,' and a motion to strike 'should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 772 (S.D. Tex. 2017) (quoting *Augustus*, 306 F.2d at 868). "A disputed question of fact cannot be decided on a motion to strike." *Augustus*, 306 F.2d at 868. "[D]istrict courts enjoy considerable discretion in ruling on a motion to strike." *Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470 (M.D. La. 2020).

Orrson's amended complaint is not so confusing as to warrant striking any portion. Orrson alleges that his gun unexpectedly discharged due to internal safety failures. (Docket Entry No. 14 ¶ 14). He does not allege that he dropped his gun, but rather that the "same underlying defect" that caused the unexpected discharge in his case also causes unexpected discharges when P320s are dropped, when there is a slight trigger actuation, and so forth. (Docket Entry No. 19 at 9; *see also* Docket Entry No. 14 ¶ 20). The assertions about drop-fires and slight trigger actuations remain relevant to the extent that they support Orrson's claim—whether it is ultimately proven or not—that the same defective internal components cause all P320 unexpected discharge incidents, which in turn is relevant (at a minimum) to the question of whether Sig Sauer knew or should have known that Orrson's gun was defective based on more than 100 other unintended discharge incidents. (*Id.* ¶ 57 (discussing Sig Sauer's knowledge in the context of the gross negligence claim)). The assertions about other types of unintended discharges are not so irrelevant as to warrant the "drastic remedy" of striking them.

6

The court also declines to strike the allegations related to external safety mechanisms. Whether a safer alternative design existed is a basic element of a design defect claim.[2]  *See In re DuPuy Orthopaedics, Inc., Pinncale Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 765 (5th Cir. 2018) ("To establish a design defect, plaintiffs had to prove that '(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery.'" (quoting *Casey v. Toyota Motor Eng'g & Mfg. N.A.*, 770 F.3d 322, 330 (5th Cir. 2014))).  Orrson's allegation is that the failure to include an external safety, which "every" non-Sig Sauer striker-fire pistol on the market has, made the P320 unreasonably dangerous.  (Docket Entry No. 14 ¶ 14, 19).

In support of its argument to strike, Sig Sauer cites *Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187 (Tex. App.—Eastland 2000, pet. denied), but that case is inapposite.  (Docket Entry No. 18 at 12–13).  In *Banzhaf*, the security system worked properly, but the defendants chose not to add an additional safety mechanism as a standard feature.  28 S.W. 3d at 187.  In contrast, Orrson alleges that even if Sig Sauer offered an external safety as an optional add-on, the failure to include an external safety as a basic element made the P320 "inherently unsafe" and at "major risk" for discharges without a full trigger pull. (Docket Entry No. 14 ¶ 15).  The lack of an external safety is an often-litigated part of P320 unexpected discharge cases.  *See, e.g.*, *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1231–32 (6th Cir. 2025) (vacating a grant of summary judgment because "[w]hether [the plaintiff] shot himself by fulling depressing the trigger (which would not have been prevented by any of [the plaintiff's] proposed alternative designs) or whether [the plaintiff]

---

[2] The amended complaint asserts that Sig Sauer is "strictly liable for the design and/or manufacturing defect in [Orrson's] P320."  (Docket Entry No. 14 ¶ 63).  There also appears to be a design defect claim based on negligence.  (*Id.* ¶ 51).  Sig Sauer has not moved to dismiss the design defect claims.

inadvertently shot himself through a graze or side-pull (which the alternative designs would have prevented) is a classic genuine dispute of material fact that should be left to the trier of fact"). Whether the kind of external safeties discussed in the amended complaint would have prevented Orrson's gun from unexpectedly discharging is a question better left for later in the litigation.[3]

### B. The Motion to Dismiss

#### 1. The Failure to Warn Claim

Sig Sauer moves to dismiss Orrson's claim for failure to warn, arguing that Texas courts "repeatedly" reject similar claims against handgun manufacturers.  (Docket Entry No. 18 at 15). "In a failure-to-warn case, the plaintiff must show that the warning was defective and that this failure to warn was the producing cause of the plaintiff's injury."  *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 428 (5th Cir. 2020).  "Generally, the adequacy of a warning is a question of fact."  *Id.* (alterations omitted) (quoting *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 592 (Tex. 1986)). "However, if a warning specifically mentions the circumstances complained of, then the warning is adequate as a matter of law."  *Id.* (quoting *Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 433 (Tex. App.—Houston [1st Dist.] 2013, no pet.)).

Sig Sauer argues that Orrson's allegation that Sig Sauer failed to warn about the risks of carrying a P320 pistol with a round loaded in the chamber is the type of "'open and obvious' danger for which no duty exists."  (Docket Entry No. 18 at 16).  Sig Sauer argues that Orrson's

---

[3] To the extent that Sig Sauer argues that Orrson sometimes makes contradictory arguments—that the gun was defective because it did not have an external safety, *and* that the gun was unreasonably dangerous regardless of that optional safety, (Docket Entry No. 20 at 4)—these contradictions are not fatal at the pleading stage.  *See Collins v. Dep't of the Treasury*, 83 F.4th 970, 983 n.14 (5th Cir. 2023) ("[W]e allow a plaintiff to plead 'allegedly inconsistent factual allegations' in his complaint." (quoting *Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2023))); *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1335 (S.D. Fla. 2020) (denying a motion to dismiss a design defect claim because the plaintiff's "failure to pinpoint which defect the implanted Product suffered from at this stage in the litigation is not fatal").

assertion that Sig Sauer "knew many of its customers carry with a chambered round" is the same argument that was rejected in *Keene v. Sturm, Ruger and Co.*, 121 F. Supp. 2d 1063 (E.D. Tex. 2000). Additionally, Sig Sauer argues that its warnings were "adequate as a matter of law" because the P320 manual contains repeated and clear warnings about the dangers of carrying a chambered round. (Docket Entry No. 18 at 16–17) (quoting *Seifried*, 410 S.W.3d at 433).

The court denies the motion to dismiss as to the failure to warn claim. As Orrson notes, Sig Sauer "conflates the obvious dangers" of normal gun operation with the "non-obvious risks" created by the P320's alleged unique defect. (Docket Entry No. 19 at 14). *Keene* reinforces this conclusion. In *Keene*, a 12-year-old boy found his stepfather's loaded revolver in a closet. 121 F. Supp. 2d at 1064. The boy then "cocked" back the hammer. When he tried to "uncock" it, his finger slipped off the trigger guard and he squeezed the trigger. *Id.* The revolver then "discharged precisely as it was designed to do," sending a fatal bullet into his friend's chest. *Id.* In dismissing the plaintiffs' failure to warn claim, the *Keene* court distinguished that factual scenario (the handgun working properly) from a case in which a plaintiff was trying to recover "for injury from a *defective* product." *Id.* (citing *Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38, 44 (Alaska 1979)). The case before this court involves an allegedly defective gun that discharged without the trigger being fully and deliberately pulled, not a gun that discharged "precisely as it was designed to do."

In the amended complaint, Orrson alleges that Sig Sauer, despite knowing of the risks of the P320's design, did not warn consumers that the P320 pistol could fire unintentionally. (Docket Entry No. 14 ¶¶ 33, 34, 51). Orrson asserts that had he "been adequately warned that the P320 could discharge without any trigger actuation due to internal component failures, he would not have purchased/carried the firearm." (*Id.* ¶ 47). Although Sig Sauer asserts that the P320's manual "expressly alerts users to the potential risk in carrying the handgun with a chambered round,"

(Docket Entry No. 18 at 17), the more "precise question" is whether Sig Sauer adequately warned that the gun's allegedly flawed design meant that it was more likely to spontaneously discharge than an ordinary pistol. *See Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309, 2015 WL 7454688, at *3 (W.D. Tex. Nov. 23, 2015). That question is better decided at a later stage on a more developed record. *Id.*; *see also*, e.g., *Williams v. Sig Sauer*, 799 F. Supp. 3d 470, 488–89 (E.D.N.C. 2025) (granting summary judgment to Sig Sauer on the inadequate warning claims because the plaintiff could not demonstrate proximate causation); *Lang v. Sig Sauer, Inc.*, 766 F. Supp. 3d 1217, 1230 (N.D. Ga. 2025) (rejecting a renewed motion for judgment as a matter of law because there was sufficient evidence to prove causation for the failure to warn claim).[4]

### 2. The Breach of Warranty Claims

Both breach of implied warranty and breach of express warranty claims require a plaintiff to provide pre-suit notice.[5] *See Decker v. Milwaukee Elec. Tool Corp.*, No. 2:21-CV-00181, 2024 WL 5203035, at *3 (S.D. Tex. Apr. 25, 2024); *Givens v. Revlon*, No. 4:23-cv-857, 2025 WL 473728, at *2 (E.D. Tex. Feb. 12, 2025). Failure to plead this element is "dispositive." *See Decker*, 2024 WL 5203035, at *3; *see also Omni USA, Inc. v. Parker-Hannafin Corp.*, 964 F. Supp. 2d

---

[4] Relatedly, Sig Sauer's citations are almost exclusively to cases that took place at the summary judgment stage. *See, e.g.*, *Seifried*, 410 S.W.3d at 431; *Gomez v. ALN Int'l, Inc.*, Civ. Action No. H-19-3852, 2022 WL 6468725, at *1 (S.D. Tex. Oct. 10, 2022); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App.—Waco 1993, writ denied).

[5] Although Sig Sauer did not raise Orrson's lack of pre-suit notice in its motion for partial dismissal, the court may still dismiss on this ground. *See Mercury Luggage Mfg. Co. v. Domain Prot., LLC*, No. 3:19-cv-01939, 2020 WL 376609, at *1 (N.D. Tex. Jan. 22, 2020) ("The court is permitted to dismiss on grounds not raised by the parties."); *see also Coates v. Heartland Wireless Comm'cs, Inc.*, 55 F. Supp. 2d 628, 633 (N.D. Tex. 1999) ("This court may dismiss a case for failure to state a claim even if it does so based on arguments that defendants did not themselves raise." (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991)). In a show cause order entered on February 11, 2026, the court asked Orrson to explain whether he provided pre-suit notice so that he would have a chance to respond to this potential ground for dismissal prior to the court's ruling. (Docket Entry No. 21).

805, 826 (S.D. Tex. 2013) ("Because Omni failed to provide such notice, it cannot recover for breach of warranty"). Texas courts apply the notice requirement "even against remote manufacturers." *Am. Econ. Ins. Co. v. Dormont Mfg. Co.*, No. 1:24-CV-377, 2024 WL 5371986, at *8 (W.D. Tex. Dec. 16, 2024). "'[C]ommencement of litigation' does not satisfy the notice requirement." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706 (5th Cir. 2014) (quoting *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 201–02 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).

In response to the court's show cause order requiring Orrson to explain whether he had provided pre-suit notice, Orrson admits that he did not. (Docket Entry Nos. 21, 24). Without the notice, the breach of warranty claims cannot proceed. *See Morgan v. Medtronic*, 172 F. Supp. 3d 959, 970 (S.D. Tex. 2016) (dismissing the breach of warranty claims because the plaintiff did not provide pre-suit notice and noting that "[c]ourts in Texas consistently hold that failure to provide pre-suit notice is fatal to a plaintiff's warranty claim"). Because the court dismisses on the grounds of notice, it does not address Sig Sauer's other arguments for dismissal. *See Mora v. AngioDynamics, Inc.*, No. 1:21-cv-199, 2022 WL 16640021, at *4 n.3 (S.D. Tex. Sep. 20, 2022).

### 3. The Gross Negligence Claim

Finally, Sig Sauer challenges Orrson's claim for punitive damages based on its willful act or gross negligence, asserting that the complaint is "devoid of any supporting facts" that warrant such relief. (Docket Entry No. 18 at 22). Texas law allows punitive damages "when a plaintiff proves gross negligence by clear and convincing evidence." *Valdez v. Valadez, LLC*, Civ. Action No. H-22-3198, 2025 WL 1745072, at *2 (S.D. Tex. June 24, 2025) (citing Tex. Civ. Prac. & Rem. Code § 41.003(A)(3)). A plaintiff "must prove by clear and convincing evidence that 1) when viewed objectively from Defendants' standpoint at the time of the event, the act or omission

involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 654 (S.D. Tex. 2016).

Sig Sauer argues that the punitive damages claim pleading is a "formulaic recitation of the elements of a cause of action" that does not meet the Rule 12(b)(6) standard. (Docket Entry No. 18 at 22) (quoting *Stanfield v. Boston Sci. Corp.*, 166 F. Supp. 3d 873, 876 (S.D. Tex. 2015)). In response, Orrson argues that he has sufficiently pleaded gross negligence because the risk posed by a gun that can discharge without a trigger pull "is, by definition, extreme," and because the amended complaint alleges that Sig Sauer was aware of over 100 incidents of unintended discharges. (Docket Entry No. 19 at 21–22). In its reply, Sig Sauer asserts that Orrson's alleged facts about Sig Sauer's knowledge relate to such alleged defects as the presence of "vibration, inertial impulses, or slight trigger contact" and the lack of an external safety mechanism, alleged defects that Sig Sauer claims are not at issue here. (Docket Entry No. 20 at 10).

The court denies the motion to dismiss the gross negligence claim. The amended complaint alleges that Sig Sauer knew of numerous instances in which these guns unexpectedly discharged; that the same flaws underly every unexpected discharge incident; that Sig Sauer continued to sell the guns despite knowledge of the design flaws; and that Orrson was injured when his gun unexpectedly discharged. "While [Orrson] may have a long road ahead of him to actually prove the elements of gross negligence, he has alleged sufficient facts to withstand a motion to dismiss." *Roberts*, 2015 WL 7454688, at *8.

12

**IV.    Conclusion**

The court denies the motion to strike and grants in part and denies in part the motion for

partial dismissal.  (Docket Entry No. 18).

SIGNED on February 23, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge